

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**SEAHORN INVESTMENTS, L.L.C.**                                      **PLAINTIFF**

VS.                                            CIVIL ACTION NO. 1:13cv320 HSO-RHW

**FEDERAL INSURANCE COMPANY, MISSISSIPPI
FARM BUREAU CASUALTY INSURANCE COMPANY,
MAXUM INDEMNITY COMPANY, STEADFAST
INSURANCE COMPANY, AND ALTERRA EXCESS
& SURPLUS INSURANCE COMPANY**                     **DEFENDANTS**

### JURY TRIAL DEMANDED

### COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff SeaHorn Investments, L.L.C. ("SeaHorn Investments"), a limited liability company, capable of filing suit and being sued, organized under the laws of the State of Mississippi, who avers, as follows:

1.

Made Defendants herein are:

(1)     FEDERAL INSURANCE COMPANY, (hereinafter referred to as "Federal") is now, and at all times relevant to this action was, a foreign insurance company organized under the laws of the State of Indiana, with its principal place of business in the State of Indiana. Federal Insurance Company is now, and at all times relevant to this action has been, conducting business in the State of Mississippi.

(2)         MISSISSIPPI FARM BUREAU CASUALTY INSURANCE COMPANY, (hereinafter referred to as "Farm Bureau") is now, and at all times relevant to this action was an insurance company organized under the laws of the State of Mississippi, with its principal place of business in Mississippi. Farm Bureau is now, and at all times relevant to this action has been, conducting business in the State of Mississippi.

(3)         MAXUM INDEMNITY COMPANY (hereinafter referred to as "Maxum") is now, and at all times relevant to this action was, a foreign insurance company organized under the laws of a state other than Mississippi, with its principal place of business in a state other than Mississippi. Maxum is now, and at all times relevant to this action has been, conducting business in the State of Mississippi.

(4)         STEADFAST INSURANCE COMPANY (hereinafter referred to as "Steadfast") is now, and at all times relevant to this action was, a foreign insurance company organized under the laws of a state other than Mississippi, with its principal place of business in a state other than Mississippi. Steadfast is now, and at all times relevant to this action has been, conducting business in the State of Mississippi.

(5)         ALTERRA EXCESS & SURPLUS INSURANCE COMPANY (hereinafter referred to as "Alterra") is now, and at all times relevant to this action was, a foreign insurance company organized under the laws of a state other than Mississippi, with its principal place of business in a state other than Mississippi. Alterra is now, and at all times relevant to this action has been,

conducting business in the State of Mississippi.

2.

This Court has subject matter pursuant to 28 U.S.C. § 1331 as the Flood Policies at issue were issued by Farm Bureau as a WYO insurer under the National Flood Insurance Program (NFIP). *See Winkler v. State Farm Fire & Casualty Co.*, 266 F. Supp. 2d 509 (S.D. Miss. 2003).

3.

SeaHorn Investments owns and is the insured of the property located at 100 Waverly Place, Bay St. Louis, Mississippi, commonly referred to as the Waverly Apartments.

4.

The Waverly Apartments are comprised of sixteen (16) separate residential buildings which contain one, two and three bedroom apartments and a separate non-residential management building and recreation center.

5.

Plaintiff secured standard flood insurance policies (hereinafter referred to collectively as the "Flood Policies") through the National Flood Insurance Program's ("NFIP") write your own policy program from defendant Farm Bureau for each of the respective buildings at the insured premises. Each building was insured for the maximum coverage of $250,000.00 for flood damages.

6.

Plaintiff further secured a Master Primary Policy ("Master Policy") with defendant Federal Insurance Company under policy number 3589-13-50 for the Waverly Apartments which insured Plaintiff against "all risks of physical damage", including coverage for damages resulting from excess flood, wind, wind-driven rain, increased cost for compliance with code and

ordinance, demolition, debris removal and business interruption, as well as other coverages. Federal is liable for the first $5,000,000 of covered damages under the Master Policy. Plaintiff pleads herein all coverages contained within the Master Policy issued by Federal.

7.

Defendant Maxum issued excess policy number MSP 601458-02 in favor of Plaintiff ("Maxum Excess Policy") insuring the Waverly Apartments pursuant to the terms of the Master Policy issued by Federal. Maxum is liable for $5,000,000 in excess of the first $5,000,000 in covered damages under the Master Policy. Plaintiff pleads herein all coverages contained within the Maxum Excess Policy.

8.

Defendant Steadfast issued excess policy number XPP-6549891-00 in favor of Plaintiff ("Steadfast Excess Policy") insuring the Waverly Apartments pursuant to the terms of the Master Policy issued by Federal. Steadfast is liable for $7,500,000 as part of $15,000,000 in excess of the first $10,000,000 in covered damages under the Master Policy. Plaintiff pleads herein all coverages contained within the Steadfast Excess Policy.

9.

Defendant Alterra issued excess policy number MAX4XP0054861 in favor of Plaintiff ("Alterra Excess Policy") insuring the Waverly Apartments pursuant to the terms of the Master policy issued by Federal. Alterra is liable for $7,500,000 as part of $15,000,000 in excess of the first $10,000,000 in covered damages under the Master Policy. Plaintiff pleads herein all coverages contained within the Alterra Excess Policy.

10.

The Flood Policies, the Master Policy, Maxum Excess Policy, Steadfast Excess Policy and Alterra Excess Policy were in full force and effect at all times pertinent hereto.

11.

On or about August 29, 2012 at approximately 2:15 a.m., Hurricane Isaac made landfall near Port Fourchon, Louisiana, and during the next several days slowly passed over the United States Gulf Coast Region, causing extensive damage to property, including the Waverly Apartments.

12.

Plaintiff incurred over five million dollars ($5,000,000) in flood damages, and an unspecified amount of other reimbursable damages at the insured premises and has received insufficient reimbursement from Defendants.

13.

The flooding and associated damages caused by Hurricane Isaac have caused severe damages to the floor joists and sub-floor at the structures on the insured premises. These damages have resulted in buckling and separation of flooring in the lower units of the buildings. The damaged floor joists and sub-flooring must be replaced for safety reasons, and the costs for replacement render each building a constructive total loss.

14.

In August 2009, the City of Bay St. Louis enacted Ordinance 521, entitled "Flood Plan Prevention Ordinance" (hereinafter "Ordinance 521"), which requires that any structures sustaining Substantial Damage be raised to comply with current Base Flood Elevation (BFE)

requirements prior to conducting repairs at the property. Ordinance 521 defines "Substantial Damage" as damage that exceeds fifty percent (50%) of the market value of the structure before the damage occurred *or* damages sustained on two separate occasions during a 10-year period for which the cost of repairs, on the average, equals or exceeds twenty five percent (25%) of the market value of the structure before the damage occurred.

15.

Ordinance 521 also requires that any property that is classified as a Repetitive Loss property be raised to comply with current BFE requirements prior to any repairs being completed to the structure. A "Repetitive Loss" property is defined in the ordinance as a property which sustains flood damages on two separate occasions during a 10-year period for which the cost of repairs at the time of such flood event, equals or exceeds twenty-five percent (25%) of the market value of the structure before the damage occurred.

16.

As a result of Hurricane Isaac, all of the structures at the Waverly Apartments sustained flood damages in excess of fifty percent (50%) of market value of the property, which triggers the requirement pursuant to Ordinance 521 that the structures be raised to comply with current BFE requirements before making any repairs.

17.

Prior to Hurricane Isaac, the structures at the Waverly Apartments were damaged by Hurricane Katrina which occurred on or about August 29, 2005. The damages were surveyed and a percentile assessment was made by the City of Bay St. Louis for each structure which found that all of the structures at the insured premises incurred damages in excess of twenty-five percent (25%) but less than fifty percent (50%) of market value of the structures at the time of

Hurricane Katrina.

18.

As a result of Hurricane Isaac individually, as well as in combination with damages previously sustained as a result of Hurricane Katrina, Plaintiff is required pursuant to Ordinance 521 to raise all structures at the insured premises to the current BFE requirements prior to making any repairs at the property, because the structures sustained "Substantial Damage" as defined in Ordinance 521. Additionally, the property is classified as a "Repetitive Loss" under Ordinance 521, which separately triggers mandatory compliance with BFE requirements pursuant to the ordinance before making any repairs to the structures.

19.

Paragraph 34 of the Master Policy issued by Federal provides coverage for the increased costs of construction to comply with any law or ordinance and states, in pertinent part:

> *34.   DEMOLITION AND INCREASED COST OF CONSTRUCTION – In the event of loss or damage under this policy that causes the enforcement of any law or ordinance regulating the construction, repair or use of property, this Company shall be liable for:*
>
> *a)   the proportion that the value of the undamaged part of the property bore to the value of the entire property prior to the loss;*
>
> *If a policy sublimit is applicable to Demolition/Increased Cost of Construction, it shall not apply to coverage under this section (a)*
>
> *b)   the cost of demolishing the undamaged property including the cost of clearing the site;*
>
> *c)   Increased cost of repair or reconstruction of the damaged and undamaged property on the same or another site and limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site. However, this Company shall not be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced;*

> d) *Any increase in loss, including, but not limited to, Business Interruption, Extra Expense, Rental Value, Rental Income, Leasehold Interest or Royalties or extensions thereof arising out of the additional time required to comply with said law or ordinance.*
>
> *If a policy sublimit is applicable to Demolition/Increased Cost of Construction, it shall not apply to coverage under this section (d).*

20.

Shortly after the Hurricane Isaac, Plaintiff contacted Farm Bureau and Federal to notify each insurer of the existence of significant physical damages to the insured premises caused by a covered cause of loss, and initiated claims under the Flood Policies as well as the Master Policy.

21.

Farm Bureau did not conduct an initial inspection of the property until several weeks after Hurricane Isaac, at which time it performed a woefully inadequate and shoddy inspection of the damages at the insured premises. Plaintiff submitted third party estimates for damages at the property totaling over $4,000,000 as well as photographs and thermal images evidencing substantial water damages to the buildings at the property.

22.

Nearly four months after Hurricane Isaac, Farm Bureau finally tendered payment for flood damages at the insured premises totaling approximately $1,250,000, a grossly insufficient sum to compensate Plaintiff for flood damages at the sixteen buildings on the insured premises.

23.

Farm Bureau has no legitimate basis for its denial of flood damages evidenced by third party estimates of damages submitted by Plaintiff. Moreover, Farm Bureau was grossly negligent in denying Plaintiff's claims for flood damages after it failed to conduct an adequate

investigation of damages to floor joists and sub-flooring at the structures on the property. Farm Bureau has no reasonably arguable basis for its denial of additional sums due to Plaintiff for flood damages resulting from Hurricane Isaac and covered by its policy with its insured.

24.

Federal failed to inspect the property until several weeks after Hurricane Isaac, at which time it performed an inadequate inspection of the damages at the insured premises. Following its initial cursory inspection of the property, Federal sent several letters to Plaintiff citing inapplicable policy provisions and conditions effectively denying coverage of Plaintiff's claims under the Master Policy.

25.

In addition to prior notice and proofs of loss, on March 19, 2013, Plaintiff sent Federal formal notice and proof of loss of damages covered under the policy. The formal Proof of Loss outlined the flood damages at the insured premises and alerted Federal to the applicability of Bay St. Louis Ordinance 521. This formal Proof of Loss was supported by reports from qualified engineering and contracting firms outlining the flood damages at the property and the increased costs to comply with Ordinance 521 in order to make repairs to the structures.

26.

On April 19, 2013, Plaintiff received a response from Federal, which again cited inapplicable policy conditions and attached two expert reports regarding the flood damages at the property, which did not include any analysis of the applicability of Ordinance 521 and its impact on the increased cost of compliance coverage under the Master Policy.

27.

Federal provided no legitimate basis for its refusal to make payment to Plaintiff for

amounts due under the Master Policy, including for increased costs of compliance with Ordinance 521. Its failure to address the compliance with ordinance and law coverage under the Master Policy demonstrated gross negligence with regard to Plaintiff's rights. Moreover, Federal's effective denial of Plaintiff's claims under the Master Policy was without a reasonably arguable basis.

28.

On May 22, 2013, over two months after Plaintiff submitted its formal proof of loss, Federal sent correspondence to Plaintiff requesting a third re-inspection of the insured premises, and reaffirming its refusal to make payment to Plaintiff of amounts due under the Master Policy without providing a legitimate basis.

29.

At the request of Federal, Plaintiff subsequently provided its formal Proof of Loss to excess insurers Maxum, Steadfast and Alterra regarding its claim for amounts due under the Master Policy with Federal.

30.

Plaintiff has cooperated with Defendants' requests for access to the property and has arranged on nearly a dozen occasions to have property managers for the Waverly Apartments provide access for the numerous representatives of Defendants to inspect and re-inspect the damages at the insured premises.

31.

Federal failed to adequately respond to Plaintiff's proofs of loss and has no legitimate basis for its ongoing refusal to tender amounts due to Plaintiff under the Master Policy, thereby subjecting Plaintiff to possible sanctions for failure to comply with Ordinance 521 and other

applicable laws.

32.

Due to the pittance paid by Farm Bureau and ongoing refusal of Federal to tender all amounts due under the applicable policies of insurance, Plaintiff has been forced to incur the expense of retaining an attorney and experts, as well as court costs, to obtain fair and just compensation of amounts due under the subject policies of insurance.

**COUNT I. BREACH OF CONTRACT**

33.

Plaintiff adopts and incorporates by reference all of the allegations in paragraphs 1 through 32, inclusive, as if fully set forth herein.

34.

Defendants have refused to provide Plaintiff with the recovery to which Plaintiff is entitled for insured losses caused by covered causes of loss, and, in so doing, have breached the express terms and conditions of the applicable insurance policies and have otherwise denied Plaintiff the insurance coverage to which it is entitled under such policies without a legitimate basis, including payment of all flood damages, increased costs to comply with applicable ordinances and laws, demolition costs, loss of business/rental income as well as other coverages provided by the policies.

35.

Defendants have not accounted for the increased costs of labor, services, raw materials, and other construction necessities due to economic conditions in the geographic location of the Gulf Coast Region following Hurricane Isaac in their property loss calculations. In so doing, Defendants have breached the express terms and conditions of the applicable policies of

insurance and have otherwise denied Plaintiff's claims without a legitimate basis.

36.

As a direct result of Defendants' conduct, Plaintiff has suffered compensatory damages in an amount yet to be ascertained but believed to be in excess of twenty million dollars ($20,000,000), and has and will continue to suffer damages, including, but not limited to, the loss of profits from the inability to lease damaged rooms, damage to business reputation, loss of future business income from customers dissatisfied with services as a result of Hurricane Isaac damage, possible sanctions arising from ongoing failure to comply with applicable ordinances and laws, and any costs and attorneys' fees incurred in maintaining this action to recover amounts due under the subject policies of insurance.

37.

<strong>COUNT II</strong>

<strong>EXTRACONTRACTUAL DAMAGES</strong>

Plaintiff adopts and incorporates by reference all of the allegations in paragraphs 1-36, inclusive, as if fully set forth herein.

38.

Recovery of breach of contract damages cannot make plaintiff whole without recovery of extracontractual damages for its reasonable attorney fees, other litigation expenses and prejudgment interest. Defendants caused plaintiff to incur those economic damages because of their unreasonable refusal to pay insurance benefits. It was a foreseeable consequence of that conduct that plaintiff would incur such economic damages in order to be made whole. *Universal Life Ins. Co. V. Veasley*, 610 So. 2d 290 (Miss. 1992).

<strong>COUNT III</strong>

## PUNITIVE DAMAGES

39.

Plaintiff adopts and incorporates by reference all of the allegations in paragraphs 1-38, inclusive, as if fully set forth herein.

40.

Defendants' conduct constitutes malice and gross negligence evidencing a willful, wanton and reckless disregard for plaintiff's rights and a reckless indifference to these rights. Defendants' conduct is so egregious as to warrant award of punitive damages.

WHEREFORE, Plaintiff, SeaHorn Investments, L.L.C., demands judgment against Defendants, Mississippi Farm Bureau Casualty Company, Federal Insurance Company, Maxum Indemnity Company, Steadfast Insurance Company, and Alterra Excess & Surplus Insurance Company for such damages as are reasonable and/or proven at trial, including payment for compensatory damages, punitive damages, attorneys' fees, litigation expense, court costs, prejudgment interest, post-judgment interest and for such further relief as the Court deems just and proper.

Respectfully submitted,

SEAHORN INVESTMENTS, L.L.C.
Plaintiff

By: _____
JOHN G. CORLEW

OF COUNSEL:

John G. Corlew (MSB # 6526)
CORLEW MUNFORD & SMITH PLLC
4450 Old Canton Road; Suite 111 (39211)
Post Office Box 16807
Jackson, MS 39236-6807
Telephone: 601-366-1106
Facsimile: 601-366-1052
jcorlew@cmslawyers.com


Alfred A. Olinde, Jr. (Bar No. 20061)
Kirk Reasonover (Bar No. 21039)
Wesley G. Barr (Bar No. 32332)
Nicholas H. Berg (Bar No. 33006)
**REASONOVER & OLINDE, LLC**
400 Poydras Street, Suite 1980
New Orleans, LA 70130
Telephone: (504) 587-1440
Facsimile: (504) 587-1577